20-3089 United States of America v. Evans Landscaping Inc. Argument not to exceed 15 minutes per side. Mr. Brian O'Connor, you may proceed for the appellants. Good afternoon. Good afternoon, your honor. Thank you and may it please the court. I've reserved four minutes of my time for rebuttal. I have three issues to discuss today. I'd like to begin by addressing the error in the jury instructions. In Warshawski, this court held that entry into conspiracy can't be proven through deliberate ignorance. That's precisely what was instructed here. This is not a typical case for a deliberate ignorance instruction. This isn't a traveler who accepts a large sum of money from a stranger to transport a bag across the border and deliberately chooses not to open the bag and see what's inside. Those are the cases. Those cases are the reasons that we have this so-called ostrich instruction. But here, the jury was alleged conspiracy by deliberate ignorance and that's just an incorrect statement of this circuit's law. The jury received three different versions of this deliberate ignorance instruction and all of them were incorrect. Counselor, about the objection to that, I know the first time there appears, first time it was mentioned, there appeared not to have been a time to object. But at the next conference, when the district court announced it would give that instruction, defendants did not object. Why isn't that a waiver? Why hasn't that been waived? Thank you for the question, Your Honor. I appreciate the opportunity for oral argument because the record here is long and I'd love to clarify. This was a four-week jury trial and the charge conference happened on Friday with the closing arguments to happen on that following Monday morning. At the charge conference, after four weeks of trial, the district court circulated draft instructions to both the government and to defense counsel and that draft didn't have any deliberate ignorance instruction in it whatsoever and that's clear from the transcript. And the district court said, it's at the transcript, it's at page ID 3006, told both counsel, I want to be clear that there's likely not going to be any changes, but then told counsel, both counsel to make their written objections by Sunday at noon with the jury instructions and the closing arguments to happen on that following Monday. And so by the Sunday at noon deadline, there was nothing for defense counsel to object to because a deliberate ignorance instruction had not been inserted and the most that defense counsel could do was object generally, which is what defense counsel did. Defense counsel cited to United States v. Mitchell, which is a case from the circuit in 2012, where this court notes that in conspiracy cases, the deliberate ignorance instruction should be used sparingly, it should not be given routinely, and it should be given with significant prudence and caution. And so the district court came out on that Monday morning of jury instructions and closing arguments and gave 52 pages of final jury instructions to counsel and by my reading of the transcript, six minutes before the jury instructions were read to the jury. Was there not a statement by the court that it was first considering a deliberate indifference and then you were, the trying counsel was told at the next conference that it would give that instruction? Your Honor, I, my recollection is that the charge conference happened on this Friday, and that the district court began the conversation then on that Monday morning, just before the jury instructions were to be given. And so the whole issue here, I understand what my friend on the other side is saying, but as a practical reality, there's only so much defense counsel can do. And if the district court on that Monday morning comes out and says, I've made these changes, I've inserted other things into this 52 pages of final jury instructions, and the district court doesn't mention anything about this. So you're, so I've misunderstood the record. So when the, the juror, when the judge decided to include that instruction, he did not tell you? That is my reading of that transcript of the closing arguments on that Monday morning, Your Honor. And by all means, I welcome my friend on the other side to try to correct the record, but that's absolutely my understanding of the record, Your Honor. Okay. And the record is that you never objected, they never objected at all? I mean, once the erroneous jury instruction was given, it seems like defense counsel is required to put on the record an objection to the instruction. And that was never made, right? I agree with you that, Your Honor, that the, there was no reference by defense counsel during closing argument to United States versus Warshawski, which is this court's precedent. But defense counsel had previously just that Friday, the last business day before, made the objection citing to United States versus Mitchell. And you're absolutely, you are correct, Your Honor, that as the 52 pages of jury instructions were being read to the jurors, there was no precise objection at the moment that this instruction was read. Okay. Before the jury retired. That's correct, Your Honor. Okay. So, I mean, assuming we're operating under plain error review, you know, view of all the facts of the case, which appears, I mean, it doesn't seem that there's a lot of doubt about the defendant joining the conspiracy. Tell me why the error would not be harmless or how it would overcome the plain error standard here. Thank you, Your Honor. So, it is not a harmless error because this goes to the elements of the offense. My friend on the other side cites to the district court statement, I believe during sentencing, that there was overwhelming evidence by Mr. Evans of knowledge. There was not overwhelming evidence that he voluntarily and knowingly joined the conspiracy. I like to think this as if there was such overwhelming evidence that he had not knowingly joined this conspiracy, then the prosecution wouldn't have had to have requested this instruction be inserted after four weeks of trial over the defense's objection. There's no reason for an ostrich instruction if the evidence was that overwhelming, Your Honor. Unless the defendant himself denied it and said, I didn't know anything about it. Ryan? I hear what you're saying, Your Honor. And again, I just, as a practical matter, I think to the fact that the district court originally didn't include this instruction. The prosecution objected and then in writing objected to the insertion of it. And it was over the defense's objection here. And the only reason for that is because there was not evidence in the record that had a knowing involuntary act to join this alleged conspiracy. Your Honor, I realize there are three issues on appeal and my time is running a little short. If I may, I'd like to hear about the suppression hearing. If you might, that's where I would love to go, Your Honor. So, um, the parties in the district court all agreed that these warrants on their face do not have the particularity required by the warrants clause. So the question is whether the incorporation doctrine saves them. I agree with the government. There are no magic words specifically required to invoke the incorporation doctrine. The agent need not write legalese and say, for example, I hereby incorporate this document by reference. But even because magic words aren't required, it doesn't mean that just any language on the warrant will do. Grove tells us that there must be appropriate words of incorporation. And I think in this case, there are three things that show us that there were no appropriate words of incorporation. First, there was nothing physically attached to these documents. Attachment A and attachment B were not attached to these warrants. Second, the words on the page weren't specific. And third, the words on the page don't reference another known document. And I'd like to explain it to you. Let me ask you, Counselor, following Grove, um, the Sixth Circuit has, has filed Berinsky. Isn't it the Sixth Circuit law that the warrant can be made valid by the presence at the search of the documents that are referenced? So, Your Honor, I, I think there are three reasons that Berinsky doesn't control the outcome of this case. First, Berinsky, the en banc decision was decided on qualified immunity grounds. The search in Berinsky happened in 2001 and the Supreme Court's decision in Grove came out in 2004. And prior to Grove, the Sixth Circuit's law was to the contrary. So qualified immunity resolves, uh, resolved Berinsky. But if you look at the arguments that were being made by the appellant in Berinsky, all of the three arguments that were, um, addressed and Judge Sutton, in his opinion, spells these out, had to do with what happened at the time the search warrant was executed. It had to do with whether, uh, counsel was given a copy, whether the affidavit accompanied the and, uh, respectfully, Your Honor, we're, we're making none of those arguments. And so Berinsky doesn't control this case. These, these warrants. But isn't it true that, that the, the police officer who served it said, I brought the affidavits, I brought the attachment with me and I explained it to Mr. Evans and then Mr. Evans and his counsel consented to the search. Isn't that what happened? If I may, Your Honor. So there is a full transcript of a hearing on this issue. And what happened was the, the first two of the three warrants at issue were simultaneously executed by the government. One was for 4229 Round Bottom Road, and one was for, I believe, 3700 Round Bottom Road. And so the affidavit went to one of the locations. And, but if you look at the return of the second warrant, it was signed by a different special agent, a special agent, Paul Heron. And so you have simultaneously executed search warrants. And so there was no way that the affiant could have been at both places and could have known, um, what, uh, or carried a document with him or, or known and, and cabined the search as the magistrate had, uh, uh, uh, authorized. He signed a consent to search? The consent to search, as I recall, Your Honor, um, Mr. Evans owns various properties and the consent to search concerned another building on, I want to say it was, uh, Mount Carmel Road and not the 4229 Round Bottom Road or the 3700 Round Bottom Road where these computers and these servers were taken from. Uh, I, Your Honor, as I see it, my time is now running short, unless there are any questions I'd like to reserve the remainder for rebuttal. Any further questions, Judge Batchelder? All right, Mr. O'Connor, you'll have your four minutes rebuttal. Thank you. Uh, let's, let's hear from the government. Good afternoon. Mary Beth Yatton on behalf of the United States. I'll begin by addressing appellant's instruction argument, which fails for three reasons. First, they didn't raise the present objection below. So review is only for plain error. Second, viewed as a whole, the instruction did not affect the verdict, much less lead to manifest injustice as required on plain error review. Um, I'd like to jump to why this is in fact plain error review in light of the court's questions. And I confess that the record could be clearer on exactly what happened, but you can see in R210, that's the transcript of the charge conference. And as my, uh, co-counsel, opposing counsel noted, that was on Friday, the court held the charge conference and the government agrees that the instructions at that time did not include a deliberate ignorance instruction. In fact, the issue was discussed at that charge conference. This is around record 210 page ID 2948. Now the important thing that the record shows us at the charge conference is that the district court said it wasn't going to decide that issue right now. It was going to do it that day. Then the parties would have until Sunday to file objections. So it was, it was not the case that nothing happened between the charge conference and Monday morning. Unfortunately, what happened, frankly, is not docketed. Um, the court indicated that it was going to email and then on Monday morning, what the court did was address some objections by the government that had been filed on Sunday, as the court required on Friday afternoon, those objections had nothing to do with deliberate ignorance. Once those are resolved, the court's clerk put on the did contain the deliberate ignorance instruction. The court announced before placing them on the screen that I have added a deliberate indifference instruction. On Monday morning, there's nothing in the record of the court making that announcement. I would suggest that that's because effectively the announcement came in the interim via the promised email, which is not in the record, unfortunately. What did happen though, on Monday morning, is that with the instructions on the screen, there's certainly no indication of a change in deliberate ignorance instruction at that time. Whereas there is indication from the court that there are changes responsive to the government's intervening Sunday objections, which is itself suggestive that there was no news on deliberate ignorance instruction on Monday morning. Once that's up, they're on the monitors, the court instructs the jury, and again, there's no objection during that time. I should jump back, because actually, after putting those final instructions on the screen, the court specifically invited objections. This is at R211, 3012. This is before any closing, when the instructions are up, page ID 3012. And what defense counsel does at that point is object to something else. An objection was raised not to the deliberate ignorance instruction. So that's opportunity number one. Opportunity number two, I suppose, is when the instructions are read to the jury. Obviously, the deliberate ignorance instruction was read. Again, no objection at that point. And importantly, after the instructions were finished, after the court finishes reading, this is at R211, transcript 3042. The court says, do we have to sidebar anything before we start? In other words, before we start closing, now that I'm finished with instructions, do we have to object outside the jury's hearing to the written instruction or to the oral instruction if they thought that the court's reading had departed? But again, no objection. Then closing arguments last all day. They've got all day Monday with the final instructions in hand throughout lunch. And then again, I've lost count. Another opportunity at the end of the day. This is at record 211, 3162. The court says, right before sending the jury out, is there anything we need to put on the record before I send the jury back? And counsel, again, respond that there is not. So any question. Let's assume, counsel, that we agree with you. That it was not objected to. We're on tough review here. I would suggest that the instruction was incorrect, that it was wrong. So how do you overcome that? Two things, I think. For one, under any standard, you're looking, of course, at the instructions as a whole. And as our brief points out, other parts of the instructions make clear that the defendant had to voluntarily join the conspiracy. We think looking at the instructions as a whole, this accurately, adequately, and fairly represented the law. But of course, on plain error review, that's not the standard. The standard is whether it's such an egregious error as to lead to manifest injustice, which brings us to the other piece. Mr. O'Connor noted, this is not a typical case where you think of deliberate ignorance. And the government would sure agree, because what we're dealing with here is a defendant who it was, the evidence made clear, was central to the conspiracy, not peripheral, not brought in through deliberate ignorance. The evidence made clear, Doug Evans and his company conspired to use a front company, Ergon, to defraud the city and state. And as summarized in our statement of facts, witness after witness testified about Doug Evans' personal control of Ergon's operations. He treated it just like part of Evans' landscaping. So your argument is it doesn't rise to the level of being just plain error, right? It doesn't rise to the level of showing the level of prejudice, even if the court thought the error was plain. In light of the evidence here, this is a core player. Doug Evans was directly involved. Can you address the search? Yes. If no one else has a question on that jury instruction, I would like to be sure that you reach the response to your opposing counsel's explanation of how the searches were executed. Thank you. And let me start by just reminding the court that appellants have been very clear that they are not challenging the execution. They expressly have made this point in the briefs that their challenge is only focused on the time of issuance. They don't claim that anyone exceeded the scope of what was authorized. So while Beranski was focused on the time of execution, appellants here have not attempted and have, in fact, affirmatively stated that's not the argument they're making. They're focusing on the time of issuance, as Beranski teaches us is the correct time as far as particularity. Beranski, you'll recall, says that, look, for execution issues, that's a reasonable standard, which probably explains why appellants are not of reasonableness here in the execution. At the time of issuance, the argument is, as I understand it from appellants, that the incorporation was insufficient by simply saying exhibit A. That was inadequate. And as I understand it, the reasoning is because I'm sorry, the wording was attachment A. That was attached to the affidavit. So what this court is really deciding is, is it adequate to satisfy the particularity requirement for a warrant to say attachment A and attachment B? Does that adequately incorporate an attachment that got docketed as part of the application rather than as part of the warrant? There's no disagreement. It was part of the package. In fact, the district court expressly found that. There was a suppression hearing. The affiant testified. There's no question. The magistrate had both of these, the warrant and the application with the exhibit simultaneously in front of her, signed both of them. Frankly, the United States finds this an easy argument. This has got to be enough to be particular. There's no question what's referred to here. Exhibit A in a simultaneously presented application package. This is not like GRO. In GRO, the warrant itself made no reference to the application or anything else. In fact, what the warrant said in GRO was some gibberish. In the place for the items to be seized, it described a house. Completely different situation. Where the court found that a reference to a patient list was adequate as long as it was in front of the magistrate at the time the warrant was issued. That parallels the situation here. I'm struggling just a little. Maybe you can help me conceptually understand it. I thought part of the importance was to give notice to the party that receives it. I understand what you're saying. They're not challenging a lack of good faith. But just to diverge just a little bit, if what goes with an officer and not the application and the exhibits, then don't you have a problem with the warrant itself in that circumstance? I thought it was the presence conveyed to the person being searched that gave validity to the affidavit. What happens if it's not there? If we're looking at your rule? So this is really, I think I'll call it Baranski's rule, not Ms. Young's rule. The government agrees, Judge Stranch, that for sure there are restrictions on what information must be available at the time of execution. And under Baranski, that's not analyzed through the particularity lens, because Baranski made clear particularity in the Fourth Amendment text is looking at no warrants shall issue without being particular. Nonetheless, under a reasonableness standard, it is necessary that at the scene, there is adequate information available about the parameters of the search that the executing officers are aware of it. That's the point that is not even being raised here. That issue has been affirmatively indicated by appellants they're not raising, and I think for good reason, because it's clear from the suppression testimony, this was present at the scene. The attachments were present at the scene, and no one claims that the searches exceeded the scope of what was described on those attachments. Counsel, I'm not sure that I'm following you there, because I thought that Mr. O'Connor said that it wasn't present, that there was more than one scene, and therefore you couldn't make the argument that the attachments were present at the scene as to all of the places searched. Am I wrong about that? To clarify, there were two locations, both on Round Bottom Road, where the search warrants were about meeting with the teams that were executing those search warrants, going over the affidavits, and there were two separate warrants, of course, that had their own packages at the two scenes. So again, I would again emphasize, we're really discussing an issue that I recognize that I'm just trying to make sure I'm straight in my own mind, how the warrants not only were issued, but were executed, because so you're saying that there were that each warrant that went to the separate places each had a package with it? That's right. Okay, thank you. And may I, Judge Griffin, if I might, I just want to make sure I at the issuance of the warrant, then how do we handle, do we only handle under reasonableness the idea that someone may have issued the warrant correctly because the magistrate had all those documents before her, but in execution of that, the only thing that shows up is the warrant without the particularity of the application or the attachments to the application. Under the rule that's being posited here, would you say what is the standard under your argument that it is particularity at issuance? How does that impact service? Yes, and under Baranski, this court's en banc opinion in Baranski, this issue has already been resolved, and it is a reasonableness standard. And in Baranski, it was reasonable because they had the attachments present. I believe that's correct, but I must say, given that this wasn't the issue raised, attention to the execution-related issue in Baranski was not as close. Judge Griffin, may I ask one more question? Sure, yes. Thank you. I have some concern about Agent Ballew acting as a summary witness. Can you explain to me how you respond to the charge that it was unduly prejudicial for the agent to present the overview of the case prior to the presentation of evidence supporting that overview? Yes, Judge Strange. I think the important thing with what the agent presented, well, a few things. The overview witnesses that raise concerns are witnesses who are presenting testimony about exhibits or other anticipated testimony that has not yet come in. So when the government attempts to use a witness at the beginning to sort of foreshadow, that can be problematic. That's not what happened here. And the reason is because the exhibits that the agent was testifying about were already in. So we don't have... You're speaking to the stipulation. That's right. Pursuant to the stipulation, and if you review the transcript of the agent's offer, again and again, they said no objection. They did object on some occasions, as they note, to the agent, the extent to which the agent was allowed to say something about the exhibit. And the district court drew the line, trying to limit the agent to simply reading, effectively publishing from those already admitted exhibits. Those were the only objections that were raised. So we don't think this is the kind of overview witness that poses those problems. Thank you. Thank you, Jason. All right. Any further questions? All right. Mr. O'Connor, you have four minutes rebuttal. Thank you, Your Honor. I'll try to be brief. So with regard to the jury instruction question, I heard my friend on the other side say that Mr. Evans was supposedly central to the scheme and was a core player, and yet she conceded that these instructions are not typical in conspiracy cases. The harm in instructing the jury this way and doing this is it goes to the elements of the offense charge. This isn't some outlier instruction. It was folded in to the elements of the offense. And so to me, that shows the harm of that. I'd like to dedicate the remainder of my time briefly then to the search warrant and the summary witness issue. Judge Strange, during my original presentation, you had asked about the consent to search. I've looked it up here during our time, and I'm correct that the consent to search was for another address. It was 4320 Mount Carmel Road, and not either of the round bottom road addresses where these servers were taken. One of the other issues that we talked about was I heard my friend say that I don't argue that anyone exceeded the scope of the search that was supposedly authorized, and I think that is the rule from, excuse me, the same argument was made in Grow. In Grow, the appellants and the petitioners had said that nobody exceeded the scope, that everybody knew what was going on here, that this issue, this warrant was still cause, and the Supreme Court in Grow said it doesn't matter. The warrant still has to comply with the particularity requirements of the warrants clause. And here again, these warrants don't comply. There's nothing attached to them, so we don't know what is authorized to be searched or to be seized. There's no specificity in the words on the page. And so if it had said attachment A, a four-page description of the premises located at 4229 Round Bottom Road, or even as in United where it says files of the following patients, then we might understand what was intended to be incorporated. But when you haven't, all that there is is a bare bones attachment A and attachment B, and you don't define that document, you don't actually attach it, and you don't reference another known document, there isn't the particularity required by the Fourth Amendment. Judge Strange, I heard you ask, you know, what if the affidavits weren't there at the time of the search? I would suggest my reading of Baranski, the majority opinion in Baranski, is that the issue in that case had to do with accompaniment and what happens at the time of search. And that is, my friend on the other side is correct, that is not an issue that is raised in this case because we're bound by the rule in Baranski. We have to look at the issuance of the warrant and whether it complied with the particularity requirements as of that instance. Was the comparator in cases that found that the warrant was not good enough, that those sections were left blank, and here you have attachment A and attachment B actually put into the warrant itself? Your Honor, I would certainly agree with you that if the fields were left blank completely, that wouldn't require, comply with the particularity requirements. And on the other extreme, if the field had described with sufficient particularity either what was intended to be incorporated or a reference to another known document, then that would suffice. But here we have bare bones, attachment A and attachment B, and oh by the way, we have three different warrants, each with an attachment A and an attachment B, two of them executed simultaneously, so it's a, it just doesn't require, comply with the constitutionally required particularity to advise both the defendant, the subject of the search, all the parties, what was authorized to be searched and what was authorized to be seized. I see my time has run short, so unless there are other questions, I'll ask you to reverse. Thank you. Any further questions, Judge Batchelder, Judge Scratch? Thank you. All right, thank you, counsel. The case will be submitted. It's my understanding that concludes the oral argument docket today, and you may adjourn court. Honorable court is now adjourned.